UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-61241-CIV-DAMIAN

CHANEL, INC.,

       Plaintiff,

v.

IPHONECASEHUB.COM, AN
INDIVIDUAL, BUSINESS ENTITY, OR
UNINCORPORATED ASSOCIATION,

       Defendant.

_____/

## ORDER GRANTING IN PART PLAINTIFF'S MOTION
## FOR ENTRY OF DEFAULT FINAL JUDGMENT [ECF NO. 12]

**THIS CAUSE** is before the Court on Plaintiff, Chanel, Inc.'s ("Plaintiff"), Motion for

Entry of Default Final Judgment against Defendant, filed August 25, 2025 [ECF No. 12 (the

"Motion")]. On August 20, 2025, a Clerk's Default [ECF No. 11] was entered against

Defendant, Iphonecasehub.com, the Individual, Business Entity, or Unincorporated

Association ("Defendant"), as identified on the Motion for Clerk's Entry of Default [ECF

No. 10] after the Defendant failed to appear, answer, or otherwise plead in response to the

Complaint despite having been served on July 25, 2025. *See* Proof of Service [ECF No. 9].

THE COURT has carefully considered the Motion, the record in this case, and the

applicable law and is otherwise fully advised. For the reasons set forth below, the Motion is

granted in part.

In the Motion, Plaintiff seeks entry of default final judgment against Defendant,

Iphonecasehub.com, the Individual, Business Entity, or Unincorporated Association

identified on Schedule "A" of Plaintiff's Motion ("Defendant"), whom is alleged to operate

the e-commerce store that infringes Plaintiff's trademarks and promotes and sells counterfeit

goods using Plaintiff's trademarks. *See generally* Compl. [ECF No. 1]. Plaintiff requests that the Court (1) enjoin Defendant from producing or selling goods that infringe its trademarks; (2) enjoin Defendant and all third parties from participating in Defendant's sale and distribution of non-genuine goods bearing counterfeits of Plaintiff's trademarks, including providing financial and technical services or other support; (3) cancel, or at Plaintiff's election, transfer the e-commerce store at issue to Plaintiff; (4) authorize Plaintiff to request any e-mail service provider permanently suspend the e-mail addresses which are or have been used by Defendant in connection with Defendant's promotion, offering for sale, and/or sale of goods bearing counterfeits of Plaintiff's trademarks; (5) assign all rights, title, and interest to the e-commerce store to Plaintiff; (6) permanently delist or deindex the e-commerce store from all Internet search engines; (7) require Defendant to request in writing permanent termination of any messaging services, e-commerce stores, usernames, and social media accounts it owns, operates, or controls on any messaging service, e-commerce marketplace, and/or social media platform; (8) award statutory damages; and (9) order Defendant and/or its financial institution to identify, restrain, and surrender to Plaintiff all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with Defendant's e-commerce store, in partial satisfaction of any award of damages. *See generally* Motion.

As of the date of this Order, Defendant has not filed a response to the Motion, and the time for doing so has expired. *See generally* docket.

## I.    BACKGROUND

### A.    *Factual Background.*

The facts supporting the requested default judgment are set out in the Complaint and the Motion for Default Judgment and the attachments submitted in support of each. Because

of Defendant's default, those allegations are deemed admitted. According to the allegations in the Complaint, Plaintiff is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Chanel Marks"):

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 - Women's Handbags |
| ⚭ | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel |
| ⚭ | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |

*See* Compl. ¶ 13; *see also* Declaration of Elizabeth Han in Support of Plaintiff's Motion [ECF No. 12-1 ("Han Decl.")] ¶ 4. The Chanel Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified therein. *See id*. ¶¶ 4–5.

Plaintiff has presented declarations demonstrating that the Defendant, through its e-commerce store operating under the seller name, Iphonecasehub.com, identified in Schedule "A" to the Motion [ECF No. 12 at 20] (the "E-commerce Store Name"), has promoted, advertised, distributed, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the

Chanel Marks. *See* Han Decl. ¶¶ 9–13; Declaration of Kathleen Burns in Support of Plaintiff's Motion [ECF No. 12-3 ("Burns Decl.")] ¶ 4; Declaration of Stephen M. Gaffigan in Support of Plaintiff's Motion [ECF No. 12-5 ("Gaffigan Decl.")] ¶ 2. Plaintiff has also shown that the Defendant is not now, nor has it ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Chanel Marks. *See* Han Decl. ¶¶ 9, 12–13.

Plaintiff alleges that its counsel retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate and document the promotion and sale of counterfeit versions of Plaintiff's branded products by Defendant and to document Defendant's payment account data for receipt of funds paid in connection with the sale of such counterfeit and infringing branded products through the E-commerce Store Name. *See* Han Decl. ¶ 10; Gaffigan Decl. ¶ 2; Burns Decl. ¶ 3. Invisible accessed Defendant's e-commerce store operating under the E-commerce Store Name and placed an order for the purchase of a product bearing and/or using counterfeits of, at least, one of the Chanel Marks at issue, and requested the product to be shipped to the Southern District of Florida. *See* Burns Decl. ¶ 4. The order was processed entirely online and following the submission of the order, Invisible documented the information for finalizing payment for the product ordered to Defendant's payment account, identified on Schedule "A." *See id.* ¶ 4, nn. 1–2; Composite Exhibit 1 to the Burns Decl. [ECF No. 12-4]. The detailed web page captures and images of the Chanel branded product ordered via the Defendant's E-commerce Store Name were sent to Plaintiff for inspection. *See* Burns Decl. ¶ 4; Han Decl. ¶ 11; Gaffigan Decl. ¶ 2. Plaintiff's representative reviewed the web page captures and images of the Chanel branded products offered for sale and ordered by Invisible via Defendant's e-commerce store operating under the E-commerce Store Name, and

determined the products were non-genuine, unauthorized versions of Plaintiff's goods. *See* Han Decl. ¶¶ 12–13; Exhibit 1 to the Han Decl. [ECF No. 12-2].

  **B.**  ***Procedural Background.***

  On June 23, 2025, Plaintiff filed its Complaint against Defendant [ECF No. 1], asserting counts for federal trademark counterfeiting and infringement (Count I), false designation of origin (Count II), common-law unfair competition (Count III), and common-law trademark infringement (Count IV). *See generally* Compl. On July 2, 2025, Plaintiff filed a Motion for Order Authorizing Alternative Service of Process [ECF No. 5], which was served on the Defendant the same day, and subsequently granted by the Court on July 24, 2025 [ECF No. 6]. In accordance with the July 24, 2025, Order, Plaintiff served Defendant with a Summons and a copy of the Complaint via electronic mail and via website posting on July 25, 2025. *See* Gaffigan Decl. ¶ 5; Proof of Service [ECF No. 9].

  The record reflects that the Defendant has not filed an answer or other response, and the time allowed for the Defendant to respond to the Complaint has expired. *See* Gaffigan Decl. ¶¶ 6–7. Plaintiff has submitted a declaration indicating that to its knowledge, the Defendant is not an infant or an incompetent person, and the Servicemembers Civil Relief Act does not apply. *See id.* ¶ 8.

  On August 19, 2025, Plaintiff moved for a Clerk's Entry of Default [ECF No. 10] as to Defendant identified therein. A Clerk's Default was entered against Defendant on August 20, 2025, for failure to appear, plead, or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. [ECF No. 11]. Plaintiff's Motion for Default Final Judgment is now before this Court and ripe for adjudication.

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). Prior to "entering a default judgment for damages, [this Court] must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). "[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citations omitted).

If the complaint states a claim, the Court must then determine the amount of damages and, if necessary, "may conduct hearings . . . [to] determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). However, where all the essential evidence to determine damages is on the paper record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . no such hearing is required where all essential evidence is already of record.") (citations omitted)); *see also Evans v. Com. Recovery Sys., Inc.*, No. 13-61031-CIV, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) (Scola, J.) ("Following the entry of a default judgment, damages may be awarded 'without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation,' so long as all essential evidence is a matter of record." (citation omitted; alteration in original)).

## III.      DISCUSSION

### A.      *Claims*.

Plaintiff seeks default judgment against the Defendant identified in Schedule "A" of the Motion as to all of the claims asserted in the Complaint: (1) trademark counterfeiting and

infringement under section 32 of the Lanham Act, in violation of 15 U.S.C. § 1114 (Count I); (2) false designation of origin under section 43(a) of the Lanham Act, in violation of 15 U.S.C. § 1125(a) (Count II); (3) unfair competition under Florida common law (Count III); and (4) trademark infringement under Florida common law (Count IV). *See* Compl. ¶¶ 36–61.

The requirements for each of the causes of action asserted in the Complaints are as follows:

    1.    <u>Trademark Counterfeiting and Infringement Under 15 U.S.C. § 1114 (Count I).</u>

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark … which … is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. To prevail on a trademark infringement claim under Section 32 of the Lanham Act, a plaintiff must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

    2.    <u>False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II).</u>

The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – *i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992).

3.    Common-Law Unfair Competition (Count III).

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *Rolex Watch U.S.A., Inc. v. Forrester,* 1986 WL 15668, at \*3 (S.D. Fla. Dec. 9, 1986) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983).").

4.    Common-Law Trademark Infringement (Count IV).

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under Section 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217–18 (S.D. Fla. 2004) (Cohn, J.).

**B.    Liability.**

The well-pled factual allegations of Plaintiff's Complaint properly allege the elements for each of the claims described above. *See generally* Compl. Plaintiff established it had prior rights to the marks at issue. *See id.* ¶ 15.  Plaintiff also alleges Defendant "is actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale its Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Chanel [.]" *Id.* ¶ 23. Further, Plaintiff alleges "Defendant's . . . infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers[.]" *Id.* ¶ 30. Moreover, the Complaint's factual allegations have been substantiated by sworn declarations and other evidence and establish the Defendant's liability for each of the claims asserted.

Accordingly, this Court finds that the entry of default judgment against the Defendant identified in Schedule "A" to the Motion pursuant to Rule 55 is appropriate.

### C.   *Relief.*

Plaintiff requests an award of equitable relief and monetary damages against Defendant for trademark infringement in Count I. The Court analyzes Plaintiff's request for relief as to Count I only, as judgment for Count II, III, and IV—false designation of origin, common law unfair competition, and common law trademark infringement—is limited to entry of the requested equitable relief under Count I. *See generally* Mot.

*Injunctive Relief.* Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (Kehoe, J.) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available, *see e.g., PetMed Express,* 336 F. Supp. 2d at 1222–23, because Defendant's failure to respond or otherwise appear makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Plaintiff has carried its burden on each of the four factors.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [the plaintiff's] business reputation and decrease its legitimate sales."). Plaintiff's Complaint alleges that Defendant's unlawful actions have caused Plaintiff irreparable injury and will continue to do so if the Defendant is not permanently enjoined. *See* Compl. ¶ 34. Further, the Complaint alleges, and the submissions by Plaintiff show, that the goods promoted, advertised, offered for sale, and sold by Defendant are nearly identical to Plaintiff's genuine products and that consumers viewing Defendant's counterfeit goods post-sale would confuse them for Plaintiff's genuine products. *See e.g., id.* ¶ 23 ("Defendant's actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendant's goods offered for sale in or through Defendant's e-commerce store are genuine goods originating from, associated with, and/or approved by [Plaintiff].").

This Court finds that Plaintiff has demonstrated that it has no adequate remedy at law so long as the Defendant continues to operate the E-commerce Store Name because Plaintiff cannot control the quality of what appears to be its products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if the Defendant's infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiff has demonstrated that it faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, the Defendant faces no

hardship if it is prohibited from the infringement of Plaintiff's trademarks. Finally, the public interest supports the issuance of a permanent injunction against the Defendant to prevent consumers from being misled by Defendant's products. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) (Altonaga, J.) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

The Court's broad equity powers allow it to fashion injunctive relief necessary to stop the Defendant's infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Here, Plaintiff has shown that the Defendant has created an Internet-based counterfeiting scheme in which it is profiting from its deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendant is conducting its unlawful activities by canceling or transferring the E-commerce Store Name, suspending the e-mail addresses used by Defendant, assigning all rights, title, and interest to the E-commerce Store Name to Plaintiff, delisting or deindexing the E-commerce Store Name from any Internet search engine, and terminating any messaging services, e-commerce store names, usernames, and social media accounts Defendant owns, operates, or controls, such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods.

*Statutory Damages*. In a case involving the use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. *See* 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that the Defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good. *See* 15 U.S.C. § 1117(c)(2). Plaintiff has elected to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citations omitted). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *See Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-Civ, 2014 WL 1652044, at *7 (S.D. Fla. Apr. 23, 2014) (Rosenbaum, J.) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent." (citations omitted)); *Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*, No. 96-6961-Civ, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where the plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is frequently almost impossible to ascertain. *See, e.g.,* S. Rep. No. 104-177, pt. V § 7, at 10 (1995) (discussing purposes of Lanham Act statutory damages); *PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (recognizing that statutory damages are "[e]specially appropriate in default judgment cases due to infringer nondisclosure" (citations omitted)).

This case is no exception. The allegations of the Complaint and the evidence establish that Defendant intentionally copied one or more of the Chanel Marks for the purpose of deriving the benefit of Plaintiff's well-known reputation. The Defendant has defaulted on Plaintiff's allegations of willfulness. *See* Compl. ¶ 29; *see also Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (Cohn, J.) (concluding that a court may infer willfulness from the defendants' default); *PetMed Express, Inc.*, 336 F. Supp. 2d at 1217 (stating that upon default, well-pleaded allegations are taken as true). As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure the Defendant does not continue its intentional and willful counterfeiting activities.

The evidence submitted in this case demonstrates that Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing marks which were counterfeits of at least one of the Chanel Marks protected by federal trademark registrations. *See* Compl. ¶¶ 13, 22, 38; Han Decl. ¶¶ 4, 9, 11–13, 20; *see also* Han Decl. Ex. 1 [ECF No. 12-2], Statutory Damages Calculation Chart.

Based on the above considerations, Plaintiff argues that the Court should award statutory damages by starting with a baseline of twenty thousand dollars ($20,000.00), trebled to reflect the Defendant's willfulness, and doubled for the purpose of deterrence, resulting in one hundred twenty thousand dollars ($120,000.00) per trademark counterfeited per type of good offered for sale or sold by Defendant. *See* Mot. at 16–17; Han Decl. ¶¶ 20–21; Statutory Damages Calculation Chart.

The award should be sufficient to deter the Defendant and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendant, all stated goals of 15 U.S.C. § 1117(c). The award of statutory damages sought by

Plaintiff does fall within the permissible range under 15 U.S.C. § 1117(c). *See, e.g.*, *Louis Vuitton Malletier v. louisvuittonbagfactoryoutlet.com*, No. 24-60898-Civ, 2025 U.S. Dist. LEXIS 83176 (S.D. Fla. April 30, 2025, docketed May 1, 2025) (Damian, J.) (entry of statutory damages award using a baseline of $20,000.00, trebled to reflect willfulness and doubled for the purpose of deterrence, resulting in $120,000.00 per trademark counterfeited per type of good offered for sale and/or sold); *adidas AG v. adidasemporium.com*, No. 24-61158-Civ, 2025 U.S. Dist. LEXIS 66865 (S.D. Fla. April 7, 2025, docketed April 8, 2025) (Damian, J.) (same); *Luxottica Grp. S.p.A. v. Individuals, Bus. Entities, & Unincorporated Ass'ns. Identified On Schedule "A"*, No. 24-61475-Civ, 2025 U.S. Dist. LEXIS 65782 (S.D. Fla. April 4, 2025) (Damian, J.) (same); *Louis Vuitton Malletier v. affordablelouisvuitton.com*, No. 24-60498-Civ, 2024 U.S. Dist. LEXIS 213119, at *16–17 (S.D. Fla. Nov. 22, 2024) (Damian, J.) (same); *Omega SA v. Individuals, Bus. Entities & Unincorporated Ass'ns,* No. 24-60989-Civ, 2024 U.S. Dist. LEXIS 155692, at *17 (S.D. Fla. Aug. 29, 2024) (Damian, J.) (same). *See also Chanel, Inc. v. Individuals*, No. 25-20070-Civ, 2025 U.S. Dist. LEXIS 58855 (S.D. Fla. March 28, 2025) (Altonaga, C.J.) (entry of statutory damages award using a baseline of $30,000.00, trebled to reflect willfulness for the purpose of deterrence, resulting in $180,000.00 per trademark counterfeited by the type of good offered for sale and/or sold); *Louis Vuitton Malletier v. Individual, Bus. Entity, or Unincorporated Ass'n*, No. 24-60567-Civ, 2024 U.S. Dist. LEXIS 215161 (S.D. Fla. Nov. 22, 2024, docketed Nov. 25, 2024) (Leibowitz, J.) (same); *Chanel, Inc. v. Individuals*, No. 24-22336-Civ, 2024 U.S. Dist. LEXIS 145638 (S.D. Fla. Aug. 15, 2024) (Bloom, J.) (same). However, given the awards cited above, the need to double the award for "deterrence" no longer finds support and does not appear to be effective. Such awards appear to be doing no more than adding to Plaintiff's bank accounts. Therefore, this Court declines to double the award as requested.

## IV.        CONCLUSION

Accordingly, based on the forgoing, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Entry of Default Final Judgment **[ECF No. 12]** is **GRANTED IN PART**. Default final judgment and a permanent injunction shall be entered as to the Defendant identified in Schedule A hereto by separate order consistent with this Order. It is further

**ORDERED** that the Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in the Southern District of Florida this 30th day of September, 2025.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

**SCHEDULE "A"**
**DEFENDANT BY E-COMMERCE STORE NAME,**
**FINANCIAL ACCOUNT, AND MEANS OF CONTACT**

| Defendant / E-commerce Store Name | PayPal Payee | Financial Account | Means of Contact |
|---|---|---|---|
| iphonecasehub.com | KaKaVy | M29YH682DYSWJ | support@iphonecasehub.com pwp-4a2828830eecbe858e8ccaea422 b3e92@privacyguardian.org |